UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DERRICK EVANS, | Case No. |
| Plaintiff, |  |
| v. |  |
| THE HUFFINGTON POST.COM, INC. and ASHLEY FEINBERG, |  |
| Defendants. |  |

# COMPLAINT

## INTRODUCTION

This defamation action is brought by plaintiff Derrick Evans ("**Evans**"), a teacher and civil rights and environmental justice advocate, against defendants The Huffington Post.com, Inc. ("**HuffPost**") and its former employee, Ashley Feinberg ("**Feinberg**" and together with HuffPost, "**Defendants**"). HuffPost and Feinberg repeatedly defamed Evans and his friend Douglas Kennedy ("**Douglas**") to a nationwide audience on multiple occasions in September 2018 by falsely asserting that they helped arrange the purchase and delivery of cocaine that resulted in the April 1984 death of David Kennedy ("**David**"), Douglas's brother and the son of the late United States Attorney General and United States Senator Robert F. Kennedy, beginning with the following:

> Two Prep students — David's brother Doug, and his friend Derrick Evans — had helped David Kennedy score the coke. Doug, class of '86, had been at the center of Georgetown Prep social life, which the former student characterized as "weekly frat-style parties with the neighboring sister schools and other private schools," often hosted by Kennedy at his family's house in McLean, Virginia.

Defendants' statements were not only false and defamatory, but outrageously so, and Defendants published them with knowledge of their actual falsity or in reckless disregard of the truth, for the apparent purpose of creating a salacious story designed to drive internet traffic to HuffPost's website.

More specifically, and as set forth in greater detail below, on September 20, 2018, HuffPost published on its website Feinberg's article, which was entitled "Former Student: Brett Kavanaugh's Prep School Party Scene Was a 'Free-For-All.'" In HuffPost's zeal to create a sensational article about then-Judge (now Justice) Brett Kavanaugh's years at Georgetown Preparatory School ("**Georgetown Prep**") and thereby drive traffic to its website, Defendants fabricated the false claim that Evans and Douglas, both of whom are, like Justice Kavanaugh, alumni of Georgetown Prep, "helped score" the illegal narcotics that killed Douglas's older brother David.

While purporting to quote at length an anonymous former student about the culture of Georgetown Prep during the 1980s, Defendants had no sources to support their outrageously false and defamatory statements about Evans and Douglas. Nor did Defendants make any effort whatsoever to contact Evans for comment before accusing him of not only of committing a crime, but of being responsible for David's death. Moreover, if Feinberg or her HuffPost editors had done even the most basic research of publicly available sources, she and they would have known, if they did not already know, that Evans actively assisted law enforcement in identifying and prosecuting the individuals who actually sold the illegal narcotics to David.

After Defendants were contacted by Douglas's representatives, who informed HuffPost in no uncertain terms that its article was false and defamatory as it related to both Douglas and

Evans, HuffPost doubled down on its defamatory attack on Evans's reputation by posting a purported "correction" on its website on September 21, 2018, which read:

> CORRECTION: This article previously stated incorrectly that Doug Kennedy was involved in helping his brother to purchase drugs in 1984. Kennedy was only sharing a room with Derrick Evans, who helped David to purchase drugs, according to an affidavit obtained by The New York Times. We regret the error.

The September 21, 2018 "correction" was another complete fabrication that HuffPost published with actual knowledge that both it and the original publication were false or made in reckless disregard of the truth, again without ever attempting to contact Evans for comment. As HuffPost knew, there was no affidavit reflecting that Evans ever helped anyone purchase illegal drugs. Defendants had no such affidavit in their possession, and they could not have had such an affidavit in their possession.

Moreover, The New York Times, which had extensively covered David's death in 1984, had made it clear in its reporting that far from "helping" David purchase the illegal drugs, Evans had assisted law enforcement and prosecutors in identifying the individuals who had sold the drugs to David. *See* Reginald Stuart, "3 Drugs are Blamed in David Kennedy Case," N.Y. Times (May 17, 1984) (available at https://www.nytimes.com/1984/05/17/us/3-drugs-are-blamed-in-david-kennedy-case.html).

As a result of Defendants' knowing and reckless publications of outrageously false and defamatory statements, Evans has suffered significant injury to his reputation and emotional distress, for which he seeks compensatory damages, as well as punitive damages in an amount sufficient to deter such egregious conduct in the future.

By way of complaint against HuffPost and Feinberg, Evans alleges and states the following:

## PARTIES

1. Evans is a resident of the State of Mississippi.

2. HuffPost is a Delaware corporation with its headquarters and principal place of business located at 770 Broadway, New York, New York 10003.

3. HuffPost is a wholly owned subsidiary of Buzzfeed, Inc., a Delaware corporation with its headquarters and principal place of business located at 111 East 18th Street, New York, New York 10003. HuffPost may be served with process through its registered agent for service of process, Corporation Service Company, at 80 State Street, Albany, New York 12207.

4. HuffPost operates a global online news and media platform at www.huffpost.com.

5. HuffPost declares on its website that it "endeavors to be accurate in its reporting, transparent and thorough in its sourcing, and fair and independent in its analysis. HuffPost strives to verify and corroborate information via multiple sources whenever possible."

6. HuffPost's website also proclaims that it:

> works to correct any misstatements in a timely manner, with a correction note appended to the bottom of an article to indicate what has been fixed and how. More prominent notices may be included for more egregious errors. HuffPost will only retract an article after extensive review by a senior editor has found fundamental flaws in the reporting, and always with an editor's note.

7. Feinberg was a senior reporter employed by HuffPost at all times relevant to this action and is a resident of the State of New York.

8. In a Columbia Journalism Review interview, Feinberg is described as a reporter who "trolls for all the right reasons," and she herself proclaims that "making people mad or uncomfortable is always a best case scenario."

## JURISDICTION AND VENUE

9. Jurisdiction is based upon the complete diversity of citizenship between Evans and Defendants. The amount in controversy exceeds $75,000, exclusive of interest and costs.

4

This Court therefore has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), in that HuffPost and Feinberg are residents of the State in which this Court is located, and pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## FACTS APPLICABLE TO ALL COUNTS

**Evans's Background**

11. Evans is a sixth-generation native of Turkey Creek, coastal Mississippi's historic Black settlement founded by his ex-slave ancestors in 1866 on the Gulf of Mexico during Reconstruction.

12. Growing up neither wealthy nor entitled, Evans obtained a full academic scholarship to Georgetown Prep in North Bethesda, Maryland in 1982. As one of the only Black students at Georgetown Prep, Evans vowed to excel and make positive changes in the world, and he has spent his adult life focusing on disaster relief, environmental causes, cultural issues and preservation, and matters of justice.

13. Evans was honored by being asked to return to Georgetown Prep in 2017 to speak to students about what "service" means and should mean to them.

14. After earning Bachelor's and Master's degrees in history, education, and African-American studies from Boston College, Evans became a history professor and lecturer on American social history and the civil rights movement. In 1992, he was awarded Harvard and Radcliffe Colleges' "Certificate of Distinction in Teaching."

15. In 1997, Evans co-founded the acclaimed and nationally emulated Epiphany School, a full-service and tuition-free independent middle school for low-income children and families in Boston.

16. In 2003, Evans founded Turkey Creek Community Initiatives, a Mississippi non-profit focused on resisting and creatively reversing cultural erosion, wetlands destruction, and government neglect in his community.

17. In 2005, in the direct wake of Hurricane Katrina, Evans co-founded the Gulf Coast Fund for Community Renewal and Ecological Health, which has directed over $5 million in critical funding to groups in coastal Louisiana, Mississippi, Alabama, Texas, and Florida. He was asked to co-develop and lead this initial special project of Rockefeller Philanthropy Advisors due to his grasp of the financial and technical needs of groups pursuing recovery and social justice in the wake of natural disasters.

18. Evans has been honored as a "Preservation Hero" by the Mississippi Heritage Trust. He was awarded the 2006 Frank L. Parker "Client of the Year" Award by the Lawyers Committee for Civil Rights. He also received the Jane Bagley Lehman Prize for Excellence in Public Advocacy from the Tides Foundation.

**HuffPost and Feinberg Defame Evans in a September 20, 2018 Article**

19. HuffPost hired Feinberg in approximately October 2017 as a senior reporter.

20. Feinberg left HuffPost's employment in approximately May 2019.

21. While employed by HuffPost, Feinberg's duties and responsibilities focused on writing news stories and other online content.

22. Feinberg has a well-earned reputation for publishing stories designed to "light up the internet."

23. In the fall of 2018, the United States Senate was holding confirmation hearings on the nomination to the United States Supreme Court of Justice (then Judge) Brett Kavanaugh who, like Evans and his friend Douglas, is an alumnus of Georgetown Prep.

24. During the controversy surrounding Justice Kavanaugh's nomination, Feinberg reported and wrote, and HuffPost published, a sensational article depicting a wild alcohol- and drug-fueled culture at Georgetown Prep in the 1980s.

25. More specifically, on September 20, 2018, HuffPost published on its website Feinberg's article entitled "Former Student: Brett Kavanaugh's Prep School Party Scene Was a 'Free-For-All'" (the "**Original Defamatory Article**").

26. A true and correct copy of the Original Defamatory Article is attached hereto and incorporated herein as Exhibit 1.

27. In HuffPost's and Feinberg's zeal to embellish a salacious article about Justice Kavanaugh's years at Georgetown Prep and to capitalize upon the controversy surrounding his confirmation hearing and thereby drive traffic to HuffPost's website, they fabricated the false claim that Douglas and Evans "helped score" the illegal narcotics that killed Douglas's older brother David in April 1984.

28. Feinberg wrote, and HuffPost published, the following in the Original Defamatory Article:

> In describing the culture of the school in those days, the former student pointed to <u>the April 1984 overdose of 28-year-old David Kennedy</u>, son of Robert F. Kennedy, who'd injected drugs into his groin, apparently to hide the needle marks. (Cocaine, Demerol and Mellaril were <u>found in his system</u>.) The former student spoke of Kennedy's death as the end of the school's free-for-all party scene and the catalyst for changes in Georgetown Prep culture.
>
> Two Prep students — David's brother Doug, and his friend Derrick Evans — had helped David Kennedy score the coke. Doug, class of '86, had been at the center of Georgetown Prep social life, which the former student characterized as "weekly frat-style parties with the neighboring sister schools and other private schools," often hosted by Kennedy at his family's house in McLean, Virginia.

29. The statement that "[t]wo students—David's brother Doug, and his friend Derrick Evans—had helped score the coke" is false.

30. Defendants' quoted statements about Evans and Douglas constituted libel per se as they not only accused Evans and Douglas of committing a crime—namely, the purchase and distribution of illegal narcotics—they also asserted that Evans and Douglas were thereby responsible for David's death.

31. In addition to being defamatory per se, Defendants' statements were knowingly, recklessly, and outrageously false. They were also published maliciously and in bad faith.

32. Neither Evans nor Douglas had helped purchase—or to use Feinberg's word, "score"—any cocaine for David.

33. In addition, despite purporting to quote an anonymous former student about David's death, Feinberg in fact had no source informing her that Evans purchased drugs for David or anyone else.

34. Feinberg fabricated the false story that Evans helped "score" the cocaine for David that resulted in his death.

35. The fabricated statement that two Georgetown Prep students "helped score the coke" that resulted in the death of David, who had not attended Georgetown Prep, lent the Kennedy family name to the article and supported Defendants' narrative that during the time Justice Kavanaugh was a student at Georgetown Prep the school had an alcohol- and drug-fueled culture.

36. The Original Defamatory Article included the search tags "Robert F. Kennedy" and "Ethel Kennedy" in order to increase dissemination of the article.

37. Many of the other statements in the article concerning the culture of Georgetown Prep in the 1980s, and particularly those concerning parties hosted by Douglas, were demonstrably false.

38. Had Feinberg or her editors at HuffPost undertaken even the most basic internet search of publicly available articles concerning the investigation into David's death, they would have learned, if they did not already know, that Evans actively assisted law enforcement in identifying and prosecuting the individuals who actually sold the illegal narcotics to David.

39. Neither Feinberg nor her editors at HuffPost made any attempt to contact Douglas for comment before the Original Defamatory Article was published.

40. Neither Feinberg nor her editors at HuffPost made any attempt to contact Evans for comment before the Original Defamatory Article was published.

41. Upon information and belief, Feinberg and HuffPost chose not to speak with Evans or Douglas, or with informed members of law enforcement, about the circumstances surrounding David's death before the publication of the Original Defamatory Article because they knew that such individuals with knowledge of the actual facts would expose the falsity of their narrative.

42. As part of the effort to disseminate the Original Defamatory Article to the broadest possible audience, HuffPost aggressively published its false and defamatory statements on the internet and further promoted the story on social media.

43. As part of that effort, Feinberg tweeted a link to the Original Defamatory Article from her personal Twitter account, which resulted in hundreds of re-tweets.

**After Being Informed That the Original Defamatory Article Was False, HuffPost Published a "Correction" That Further Defamed Evans**

44. On Friday, September 21, 2018, a representative of Fox News, where Douglas worked as a reporter, contacted HuffPost on Douglas's behalf and informed HuffPost in no uncertain terms that the Original Defamatory Article was false and defamatory, and had obviously been published without any fact-checking whatsoever.

45. The Fox News representative told HuffPost that the Original Defamatory Article was so deficient it should be removed in its entirety from HuffPost's website.

46. Instead of pulling down the Original Defamatory Article, HuffPost doubled down on its libelous campaign against Evans by posting a purported "correction" at 6:19 p.m. on September 21, 2018 (the "**Defamatory Correction**"), which defamed Evans again, declaring as follows:

> Two Prep students — Doug Kennedy and his friend Derrick Evans — were sharing a room at the Brazilian Court Hotel in Palm Beach. Evans had helped score the coke for David, Doug's brother, who was staying in a separate room. Doug, class of '86, had been at the center of Georgetown Prep social life, which the former student characterized as "weekly frat-style parties with the neighboring sister schools and other private schools," often hosted by Kennedy at his family's house in McLean, Virginia.

*   *   *

> **CORRECTION**: *This article previously stated incorrectly that Doug Kennedy was involved in helping his brother to purchase drugs in 1984. Kennedy was only sharing a room with Derrick Evans, who helped David to purchase drugs, according to an affidavit obtained by The New York Times. We regret the error.*

47. A true and correct copy of the Defamatory Correction is attached hereto and incorporated herein as Exhibit 2.

48. Despite having been informed that their original statements about how David acquired the cocaine were false, neither HuffPost nor Feinberg contacted Evans for comment before publishing the falsehood that Evans "helped David purchase the drugs."

49. The quoted statement about Evans in the Defamatory Correction is false.

50. HuffPost and Feinberg knew the quoted statement about Evans in the Defamatory Correction was false when it was published.

51. HuffPost and Feinberg knew that there was no affidavit "obtained by the New York Times" reflecting that Evans helped David purchase illegal drugs, and further knew that they had no such affidavit in their possession.

52. Prior to publication of the Defamatory Correction, neither Feinberg nor her editors at HuffPost ever read or saw the affidavit referenced in the Defamatory Correction.

53. HuffPost does not have in its possession a copy of the affidavit referenced in the Defamatory Correction.

54. Upon information and belief, Defendants never spoke to anyone at The New York Times, nor did they actually read any previous reporting by The New York Times about the investigation into David's death, prior to publishing either the Original Defamatory Article or the Defamatory Correction.

55. Indeed, The New York Times, which had previously reported on David's death, had made it clear that far from "helping" David purchase the drugs, Evans had assisted law

11

enforcement and prosecutors in identifying the individuals who had actually sold the illegal drugs to David. *See* Reginald Stuart, "3 Drugs are Blamed in David Kennedy Case," N.Y. Times (May 17, 1984) (available at https://www.nytimes.com/1984/05/17/us/3-drugs-are-blamed-in-david-kennedy-case.html).

56. Specifically, in the referenced article, The New York Times made it clear that:

- Peter Andrew Merchant of Warwick, Rhode Island, and Lindwood Dorr of West Yarmouth, Massachusetts, were arrested for selling the illegal drugs to David;

- "Investigators … determined that David Kennedy probably obtained some or all of the high-grade cocaine he used on his final visit here through the two men arrested."

- "Much of the information in the state's affidavit linking Mr. Kennedy to the two men arrested today appeared to rely on statements obtained from Derrick Evans, a prep school classmate of Douglas Kennedy, a younger brother of David … . Mr. Evans was staying with Douglas Kennedy at the Brazilian Court in a room separate from David Kennedy."

- "The affidavit said the two men arrested today met David Kennedy at the Brazilian Court on or about April 20 and were asked by him to obtain some cocaine for him. The affidavit said Derrick Evans was present when the purchase of cocaine was discussed."

57. The New York Times has never reported that it had obtained an affidavit stating that Evans "helped" to procure illegal drugs for David.

58. Despite having been informed by telephone and in writing on September 21, 2018 that the Original Defamatory Article was false, and after being pointedly criticized by Douglas's representative for having published their statements without first seeking comment from Evans or Douglas, Defendants nevertheless again chose not to contact Evans before publishing the Defamatory Correction.

59. Defendants chose not to contact Evans prior to publishing the Defamatory Correction because they knew he would expose their fabrication that an affidavit existed

demonstrating that a Georgetown Prep student had "helped purchase the drugs" that resulted in David's death, and thereby destroy any purported nexus between David's death and Justice Kavanaugh's nomination to the United States Supreme Court.

60. Similarly, Defendants chose not to contact members of the Palm Beach County Sheriff's Department or any other law enforcement community to discuss David's death and the resulting investigation despite being told that the Original Defamatory Article was false, precisely because they knew that members of law enforcement would expose their fabrications.

61. Like the Original Defamatory Article, the republished story with the Defamatory Correction also contained the search tags "Robert F. Kennedy" and "Ethel Kennedy" in order to increase dissemination of the article.

62. HuffPost and Feinberg intentionally published a defamatory statement concerning Evans that they knew to be false or, at a minimum, they willfully and recklessly disregarded known evidence that their purported "correction" was false.

63. HuffPost and Feinberg further published the Defamatory Correction maliciously and in bad faith.

**HuffPost Continues in Its Refusal to Post an Actual and Unequivocal Retraction**

64. Not satisfied by the publication of the Defamatory Correction, Douglas retained legal counsel, who contacted HuffPost and Feinberg by letter dated September 22, 2018, demanding a full retraction and other redress.

65. In the September 22, 2018 letter, HuffPost was again informed that its statements about Evans were false and that its conduct was reprehensible:

> You placed into the public sphere an outrageously false claim that Mr. Kennedy supplied the illegal narcotics that killed his older brother David, and then followed your shameful lie with an insincere, incorrect "apology" that placed blame on Mr. Kennedy's friend [*i.e.* Evans].

13

66. Rather than issuing a full retraction and an actual apology to Evans, Defendants "updated" their article on September 24, 2018 by removing all references to Douglas and Evans, but only after having promoted the Original Defamatory Article on social media and on the internet.

67. The sanitized version of the article omitting any reference to Evans, Douglas, David, and the Kennedy family included a disingenuous and misleading "correction," which stated:

> **CORRECTION:** This article previously mischaracterized the involvement of individuals in a drug purchase. References to those individuals and the incident have been removed. We regret the error. Additionally, certain references by the former student to specific individuals have been removed to better reflect the intended purpose of the article: to provide a former student's general characterizations of the party culture.

68. The sanitized version of the article published on September 24, 2018 also deleted the search tags "Robert F. Kennedy" and "Ethel Kennedy."

69. A true and correct copy of the sanitized version of the article published on September 24, 2018 is attached hereto and incorporated herein as Exhibit 3.

70. This second attempt at a "correction" by HuffPost continued its pattern of public deception.

71. The Original Defamatory Article and the Defamatory Correction did not "mischaracterize the involvement of individuals in a drug purchase" because neither Douglas nor Evans had been involved in a drug purchase.

72. Defendants' second purported "correction" was made maliciously and in bad faith.

73. Despite HuffPost's professed commitment "to be accurate in its reporting, transparent and thorough in its sourcing, and fair and independent in its analysis … [and to]

14

strive[] to verify and corroborate information via multiple sources whenever possible," Defendants wholly failed to meet every single one of those standards in their treatment of Evans.

**Evans Demands a Proper Retraction of Defendants' False and Defamatory Statements, Including Those Published Through Social Media**

74. On May 3, 2019, Evans, through counsel, wrote to HuffPost and Feinberg, demanding a written apology and a public retraction of all of HuffPost's and Feinberg's prior defamatory statements, including those published through social media, given that Defendants had actively disseminated the Original Defamatory Article through social media, including through Twitter.

75. Defendants have failed and refused to issue to Evans either an apology or a proper retraction of their prior false and defamatory statements about him, including those Defendants disseminated through social media.

## COUNT I
## Defamation

76. Evans realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

77. Defendants published to third parties statements of purported fact of and concerning Evans that asserted directly that he "helped score" illegal narcotics that resulted in David's death.

78. Defendants' statements regarding Evans are false.

79. Defendants' statements have a defamatory effect and constitute libel per se as they accuse Evans of engaging in serious criminal activity.

80. Defendants' statements were false, malicious, and fabricated, and were published with a knowing, intentional, and subjective awareness of, and/or a reckless disregard of, their falsity.

81. Evans has suffered damages as a result of Defendants' statements, including emotional distress and harm to his reputation.

## COUNT II
**Punitive Damages**

82. Evans realleges the allegations contained in the preceding paragraphs as though fully set forth herein.

83. Defendants' actions and omissions described above were intentional, willful, reckless, malicious and/or grossly negligent, demonstrating a conscious disregard for Evans's rights and reputation, and entitling him to an award of punitive damages in an amount sufficient to deter Defendants and others from such conduct in the future.

**WHEREFORE**, Evans demands judgment in his favor and against HuffPost and Feinberg, jointly and severally, awarding him damages, pre-judgment interest, and post-judgment interest, together with punitive damages, attorneys' fees, and costs, and granting to Evans such other further relief that this Court deems just and proper.

**JURY DEMAND**

Evans hereby demands a trial by jury of all issues so triable to the fullest extent provided by law.

Dated: May 24, 2022                            /s/ Steven C. Reingold

                                            Steven C. Reingold
SAUL EWING ARNSTEIN & LEHR LLP
1270 Avenue of the Americas, Suite 2005
New York, New York 10020
telephone: (212) 980-7200
email: steven.reingold@saul.com

Jeffrey S. Robbins
Joseph D. Lipchitz
SAUL EWING ARNSTEIN & LEHR LLP
131 Dartmouth Street, Suite 501
Boston, Massachusetts 02116
telephone: (617) 723-3300
email: jeffrey.robbins@saul.com
       joseph.lipchitz@saul.com

John P. Sneed
Charles E. Cowan
WISE CARTER CHILD & CARAWAY, P.A.
600 Heritage Building
401 East Capitol Street
Jackson, Mississippi 32901
telephone: (601) 968-5500
email: jps@wisecarter.com
       cec@wisecarter.com

Attorneys for Plaintiff Derrick Evans